UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RAUL VICENTE CORDOBA CORDOBA,

Petitioner,

v.

TODD BLANCHE, et al.,

Respondents.

Case No. 2:26-cv-03254-BAT

ORDER GRANTING HABEAS PETITION

Petitioner Raul Vicente Cordoba Cordoba is a citizen of Cuba who is currently detained by the U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center in Tacoma, Washington. Dkt. 6 (Habeas Petition); Dkt. 11 (Deportation Officer ("DO") Declaration). Over the past two decades, Respondents have repeatedly revoked Petitioner's release and re-detained him, most recently doing so in July 2026. Dkt. 6 at 7; Dkt. 11 at 2-4.

He petitions for a writ of habeas corpus under 28 U.S.C § 2241 and seeks (1) immediate release; (2) restrictions on his re-detention; and (3) restrictions on third country removal. Dkt. 6 at 34-35.

The parties unanimously consent to proceed before a Magistrate Judge. Dkt. 4. For the reasons below, the Court **GRANTS** the habeas petition and **ORDERS** Respondents to immediately release Petitioner within **twenty-four (24) hours** of this Order, with a certification of release to be filed with this Court within **forty-eight (48) hours** of this Order.

## BACKGROUND

On July 5, 1995, Petitioner, a citizen of Cuba, entered the United States and was apprehended and paroled. Dkt. 6 at 7; Dkt 11 at 2. On May 27, 1998, Petitioner was convicted of a criminal offense in Florida. Dkt. 6 at 7; Dkt. 11 at 2. Immigration proceedings were initiated against Petitioner under 8 U.S.C. § 1182(a)(2)(A)(i)(I). Dkt. 6 at 7; Dkt. 11 at 2; Dkt. 12-1 (Notice to Appear). Over the following years, Petitioner was convicted of additional crimes. Dkt. 6 at 7; Dkt. 11 at 2-4.

On June 30, 1999, an Immigration Judge ("IJ") ordered Petitioner removed to Cuba. Dkt. 6 at 6; Dkt. 11 at 2. Over the following years, Petitioner was repeatedly re-detained and re-released under an Order of Supervision ("OSUP") after unsuccessful attempts to remove him to Cuba. Dkt. 6 at 6-7; Dkt. 11 at 2-4. Petitioner asserts, and Respondents do not substantively dispute, that Petitioner's total length of detention across these re-detentions is greater than six months. *See, e.g.*, Dkt. 6 at 7; Dkt. 10 at 7-8.

On July 20, 2026, Respondents most recently re-detained Petitioner at a scheduled check-in and he was ultimately transferred to NWIPC. Dkt. 6 at 7; Dkt. 11 at 4; Dkt. 12-3 (I-213 Form).

Respondents assert the July 2026 re-detention was based on "there being a significant likelihood of removal in the reasonably foreseeable future" as "Mexico has been accepting Cuban nationals . . ." Dkt. 11 at 4. They claim that on "September 8, 2026, [Respondents were] told by government of Cuba that they will not accept [Petitioner] back." Dkt. 11 at 4. That same day, Petitioner was served with "a notice of removal to Mexico" and Respondents claim Petitioner states he was "willing to go to Guayana or Uruguay in the case Mexico doesn't accept him." Dkt. 11 at 4. However, Respondents do not claim to be in possession of a travel document, nor do they provide an estimated timeline for removal.

Petitioner claims that since his July 2026 re-detention, Respondents "reportedly ha[ve] attempted to remove [him] to Mexico without success because he refuses to accept Mexico as a third country for removal." Dkt. 6 at 7. Further, Respondents have "in the alternative, attempted to remove him to Spain without success because again he refuses Spain (or any other third country) . . ." Dkt. 6 at 7.

## DISCUSSION

Petitioner asserts the following claims for relief. Dkt. 6 at 27-34. First, he asserts a claim under *Zadvydas v. Davis*, 533 U.S. 678 (2001), arguing there is no significant likelihood of removal in the reasonably foreseeable future. Dkt. 6 at 27. Second, he asserts a procedural due process claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976). Dkt. 6 at 28. Third, he argues Respondent's revocation of his OSUP did not comply with regulations, namely 8 C.F.R. § 241.13. Dkt. 6 at 29. Fourth, he asserts a substantive due process claim, arguing his re-detention was punitive. Dkt. 6 at 30. Fifth, he requests protections against third country removal. Dkt. 6 at 30. Finally, he argues Respondents are pursuing a punitive third country removal policy. Dkt. 6 at 32.

### A. *Zadvydas* Claim

"[W]hen [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days" also known as "the 'removal period.'" 8 U.S.C. § 1231(a)(1)(A). The removal period begins, among other options, on the "date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i).

While 8 U.S.C. § 1231(a)(6) authorizes further detention if the government fails to remove the alien during those 90 days, allowing the "indefinite detention" of noncitizens "would raise serious constitutional concerns." *Zadvydas*, 533 U.S. at 682. "[T]o avoid a serious

constitutional threat," the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Supreme Court held six-months was a "presumptively reasonable period of detention." *Id.* at 701.

*Zadvydas* claims require a two-step process. First, Petitioner "bear[s] the initial burden of providing 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1082 (C.D. Cal. 2020) (quoting *Zadvydas*, 533 U.S. at 701). Second, "[o]nce that initial showing is made, the burden shifts to the Government to respond with evidence sufficient to rebut it." *Id.* (citing *Zadvydas*, 533 U.S. at 701).

Here Petitioner asserts, and Respondents do not substantively dispute, that Petitioner is outside the presumptively reasonable period contemplated by *Zadvydas*, 533 U.S. at 701. Dkt. 6 at 7; Dkt. 10 at 7-8.

For the first *Zadvydas* step, the Court finds Petitioner satisfied his burden. Petitioner asserts that during his numerous re-detentions, "he was not deported or removed to Cuba because Cuba would not cooperate . . ." Dkt. 6 at 7. Following Petitioner's July 2026 re-detention, Respondents have "attempted to remove [Petitioner] to Mexico without success because he refuses to accept Mexico" or any other third country of removal. Dkt. 6 at 7. Stated otherwise, "no other third country seems to be a viable option because attempts to remove [Petitioner] to other third countries, such as Mexico, have failed." Dkt. 6 at 8. "Mexico has a policy to not accept non-Mexican nationals if they do not consent" and "Spain may have a similar policy." Dkt. 6 at 8.

For the second *Zadvydas* step, the Court finds Respondents have not satisfied their burden. They "acknowledge that courts in this District have granted release where ICE pointed to

Mexico after Cuba refused or did not respond" but argue Petitioner's specific circumstances are distinguishable. Dkt. 10 at 8-9. They assert that after they served Petitioner with notice of removal to Mexico, there is "no evidence presented that [Petitioner] has not refused Mexico during this detention" and claim Petitioner "is willing to go to Guyana or Uruguay" as alternatives. Dkt. 10 at 8-9. However, Respondents also candidly acknowledge the "Government does not represent that Mexico has issued a travel document, agreed to accept Petitioner, or set a removal date" but generally assert ICE Enforcement and Removal Operations ("ERO") "believes Mexico has been accepting Cuban nationals . . ." Dkt. 10 at 9.

Stated otherwise, Respondents fail to offer a specific estimate or substantive details regarding their process for obtaining travel documents or when Petitioner may be removed. This Court has rejected similar, if not more detailed, statements regarding removal. *See, e.g., Saadhom v. Bondi*, 829 F. Supp. 3d 907, 917 (W.D. Wash. 2026) (rejecting assertions that the government "submitted travel document requests to Canada, Panama, and Costa Rica" as "they are silent as to whether they have heard back from those countries" and can offer no timeline or "specific date of anticipated removal."); see also *Kamyab v. Bondi*, No. C25-389RSL, 2025 WL 2917522, at *4 (W.D. Wash. Oct. 14, 2025) (rejecting "generalized statements" such as that "in general 'Iran is accepting return of its citizens'" but is "'reviewing its backlog of cases and would be reaching out with interview requests'").

Thus, the Court finds Petitioner is entitled to release under *Zadvydas*. Release is warranted under *Zadvydas* even though Petitioner has a criminal history. *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1199 (W.D. Wash. Dec. 4, 2025) (quoting *Zadvydas*, 533 U.S. at 684) (explaining that while the "Court does not take lightly respondents' warning that petitioner is still 'a danger to the community' . . . the Court is bound by the holding in *Zadvydas*, a case that

notably involved [an] individual with 'a long criminal record' and 'a history of flight.'"); *see also Hamedani v. Bondi*, No. 2:25-cv-02509-JNW, 2026 WL 452424, at *3-4 (W.D. Wash. Feb. 18, 2026) (noting that despite the petitioner's "criminal history . . . [h]e must be released" under *Zadvydas*).

As the Court finds Petitioner is entitled to release under *Zadvydas*, it need not address his other claims seeking release.

**B. Injunctive Relief**

Petitioner also requests injunctive relief concerning re-detention and third country removal. Specifically, he requests this Court order (1) that the government may not re-detain him without first holding a hearing before a neutral decisionmaker; (2) that the government may not remove him to a third country without notice and a meaningful opportunity to respond; and (3) that the government may not remove him to a country where he is likely to be imprisoned or otherwise punished on arrival. *See, e.g.*, Dkt. 6 at 34-35.

**i. Re-Detention**

As a preliminary note, the Court finds the government must comply with 8 C.F.R. § 241.13 in the event of re-detention. For example, upon revocation of an OSUP the regulation requires that the noncitizen be "notified of the reasons for revocation of his or her release," and that there be "an initial informal interview promptly . . . to afford the [noncitizen] the opportunity to respond to the reasons of revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Accordingly, in the event of a future re-detention the government must provide Petitioner notice and an opportunity to respond that complies with 8 C.F.R. § 241.13(i).

Additionally, given it is undisputed Petitioner has been repeatedly re-detained and re-released multiple times over the previous years owing to an inability to obtain travel documents

to Cuba or another nation, the Court finds the below injunctive relief is appropriate. *See, e.g.*, *Bista v. Bondi*, No. 2:26-cv-00358-BAT, 2026 WL 517155, at *4 (W.D. Wash. Feb. 25, 2026) (citing *Tang v. Bondi*, No. 2:25-cv-01473-RAJ, 2025 WL 3551381, at *3 (W.D. Wash. Dec. 11, 2025); *Do v. Scott*, No. C25-2187RSL, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025)).

This Court orders the government may not re-detain Petitioner unless:

(1) He violates a condition of his release, and the government holds a hearing before a neutral decisionmaker at which the government bears the burden of demonstrating flight risk or danger to the community by clear and convincing evidence; or
(2) The government (i) obtains a valid travel document, (ii) provides the valid travel document to him and his counsel, (iii) offers Petitioner the opportunity to leave on his own within two months, and (iv) if Petitioner does not leave, the government may re-detain him provided they have made concrete arrangement for his removal in the reasonably foreseeable future.

**ii. Third Country Removal**

Petitioner also seeks relief concerning third country removal. *See, e.g.*, Dkt. 6 at 31-32, 34-35.

The Court finds that in the event the government seeks to remove Petitioner to a third country, it must provide him sufficient notice and a meaningful opportunity to respond in line with the processes and protections discussed in *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1017-21 (W.D. Wash. 2019); *see also Nguyen v. Scott*, 796 F.Supp.3d 703, 727 (W.D. Wash. 2025); *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."). This includes, but is not limited to, the restriction that the government "may not remove a noncitizen to a country if the noncitizen's life or freedom would be threatened in that country because of the noncitizen's race, religion,

nationality, membership in a particular social group, or political opinion." *Aden*, 409 F. Supp. 3d at 1017.

The Court finds, however, that the record provided does not also support Petitioner's claims that his re-detention, or the government's third country removal policy at large, is punitive and therefore violative of the Fifth and Eighth Amendments. Petitioner asserts various news articles and declarations from other immigration matters. *See, e.g.*, Dkt. 6 at 21-25. However, Petitioner's evidence is not "specific to a particular population and particular destination countries" in a way that is substantively relevant to the present matter. *See Saadhom*, 829 F. Supp. 3d at 919-20; *see also Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025). Therefore, the Court does not have a sufficient basis to address Petitioner's claim that Respondent's third country removal policy is unconstitutionally punitive. *See Elshourbagy v. Bondi*, 817 F.Supp.3d 1102, 1116-17 (W.D. Wash. 2025).

## CONCLUSION

The Court thus **GRANTS** the habeas petition and **ORDERS:**

**1)** Respondents shall immediately release Petitioner **within twenty-four (24) hours** of this Order.

**2)** Respondents shall release Petitioner under the same conditions of release in place prior to his most recent re-detention.

**3)** Respondents are ordered to release Petitioner with all of his currently prescribed medications.

**4)** Respondents shall file a declaration with the Court confirming the date and time of Petitioner's release **within forty-eight (48) hours** of this Order.

**5)** Respondents are **PROHIBITED** from re-detaining Petitioner unless:

**a.** He violates a condition of his release, and the government holds a hearing before a neutral decisionmaker at which the government bears the burden of demonstrating flight risk or danger to the community by clear and convincing evidence; or

**b.** The government (i) obtains a valid travel document, (ii) provides the valid travel document to him and his counsel, (iii) offers Petitioner the opportunity to leave on his own within two months, and (iv) if Petitioner does not leave, the government may re-detain him provided they have made concrete arrangement for his removal in the reasonably foreseeable future.

**6)** Respondents are **PROHIBITED** from removing Petitioner to any third country without notice and a meaningful opportunity to respond.

**7)** Respondents are **PROHIBITED** from removing Petitioner to any country where he is likely to face imprisonment or other punishment upon arrival.

Dated this 6th day of October, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge